UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

LARRY S. HUMPHREYS            )
                             )
v.                           )            No. 1:04-cv-141/1:01-cr-193
                             )            *Edgar*
UNITED STATES OF AMERICA      )

## MEMORANDUM

This case is before the Court on remand by the United States Court of Appeals for the Sixth Circuit with instructions for this Court to determine whether Larry S. Humphreys' ("Humphreys") § 2255 motion is timely under 28 U.S.C. § 2255(2) or (4) or entitled to equitable tolling. For the following reasons, the § 2255 motion will be **DENIED** as time-barred.

## I.     Procedural History

On October 24, 2001, a federal grand jury sitting in the Eastern District of Tennessee returned a twenty-four count indictment against Humphreys in connection with ten armed robberies of businesses, in violation of the Hobbs Act, 18 U.S.C. § 1951, and two armed robberies of banks, in violation 18 U.S.C. § 2113(a). In addition, the grand jury indicted Humphreys on twelve related charges of using and carrying a .25 caliber semi-automatic pistol during each of the twelve robberies, in violation of 18 U.S.C. § 924(c)(1)(A)(I). (Criminal Case No. 1:01-cr-193; Court File No. 2, Indictment).

Humphreys was evaluated at the Federal Medical Center in Butner, North Carolina after filing a Notice of Intent to Rely on an Insanity Defense and a Motion for a Psychiatric Examination

(Criminal Case No. 1:01-cr-192, Court File No. 13, Notice of Intent; Court File No. 15, Motion for

1

Psychiatric Examination). Humphreys subsequently waived a mental competency hearing.

On August 1, 2002, pursuant to a plea agreement with the United States, Humphreys pled guilty to the two bank robberies charged in Counts Thirteen and Twenty-three, and to the related § 924(c) charges of carrying a firearm during and in relation to the bank robberies, Counts Fourteen and Twenty-four (Criminal Court File Nos. 24, 25).

Humphreys was sentenced by the Court on November 18, 2002, to concurrent terms of imprisonment of 70 months on each of the bank robbery convictions charged in Counts Thirteen and Twenty-three, to a statutory mandatory consecutive term of 60 months on Count Fourteen § 924(c) conviction, and to a statutory mandatory consecutive term of 300 months on Count Twenty-four § 924(c) conviction, for a total sentence of 430 months (Criminal Court File No. 28). Pursuant to the government's motion in accordance with the plea agreement, the Court dismissed the remaining ten charges of armed robberies of the businesses, the Hobbs Act violations, and the ten related § 924(c) firearms charges.

Judgment was entered on December 9, 2002. No direct appeal was filed. The judgment became final on December 23, 2002. *See Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004). On May 20, 2004, seventeen months after his judgment became final, Humphreys filed a motion pursuant to 28 U.S.C. § 2255 raising multiple issues. The Court dismissed the motion as time-barred and denied a certificate of appealability.

Humphreys filed a timely Notice of Appeal on April 6, 2005, but on July 7, 2005, the Sixth Circuit dismissed the appeal for failure to pay the filing fee. The Sixth Circuit, however, subsequently granted Humphreys' motion to reinstate the appeal and a motion to proceed *in forma pauperis*. On June 29, 2007, the Sixth Circuit remanded the case back to the district court to

determine the statutory timeliness of Humphreys' § 2255 motion. The Sixth Circuit specifically asked this Court to consider two issues: (1) whether Humphreys' § 2255 motion was timely under 28 U.S.C. § 2255(4), and (2) whether Humphreys' was impeded in filing his § 2255 motion under 28 U.S.C. § 2255(2). Out of an abundance of caution, the Court will also analyze the equitable tolling issue.

The Court ordered Humphreys to submit copies of all documents supporting his claim that the petition is timely under § 2255 (2) and (4). Specifically, Humphreys was ordered to submit all documents he discovered through his pending state matter showing his plea was unknowing and unintelligent because his attorney was untruthful in disclosing details of his case. Humphreys was further ordered to submit all documents demonstrating his federal appointed attorney and the prosecutor severely misrepresented his case, that his attorney was in collusion with the prosecutor, and that his fate was decided by his attorney and the prosecutor without his involvement and before the outcome of his mental evaluation. Additionally, Humphreys was ordered to file a detailed sworn statement of his allegations of facts which support his claim that his attorney severely misrepresented his case to him and that this evidence was newly discovered prior to filing his initial § 2255 motion. Specifically, Humphreys was ordered to state what he knew at the time of his plea; what he has since discovered that would have affected his decision to enter a plea; and all of his allegations surrounding his impediment claim under 28 U.S.C. § 2255(2). Humphreys was permitted to file a memorandum of law with the direction that it be strictly limited to the issue of the timeliness of his § 2255 motion, his claim of newly discovered evidence, and his impediment argument under 28 U.S.C. § 2255(2).

The government was ordered to file its affidavit, documents, response, and memorandum and

advise the Court as to its position on the necessity of an evidentiary hearing.

The Court observes that Humphreys' response and statements from witnesses are not notarized. However, Humphreys states his document "is held accountable under the penalty of perjury" and the statements from witnesses reflect they are made "under penalty of perjury." (Criminal Court File No. 35). Nevertheless, only portions of Humphreys' supplement and the email documents are responsive to the Court's Order. The Court will first summarize the offense conduct facts, the guilty plea facts, and the facts alleged in Humphreys' § 2255 motion, before summarizing Humphreys' supplemental facts and the Government's response.

## II.    Facts

### 1.    *Offense Conduct Facts*

The following facts as to Humphreys offense and relevant conduct were summarized in the plea agreement he signed:

> From on or about June 30, 2001, through September 21, 2001, the defendant committed numerous armed robberies in the Chattanooga, Tennessee area and elsewhere. On August 17, 2001, a white male, later identified as the defendant, entered the First Tennessee Bank located at 1 Cherokee Boulevard, Chattanooga, Tennessee, located in the Eastern District of Tennessee, a bank whose deposits were then insured by the Federal Deposit Insurance Corporation. The defendant robbed a teller using a demand note and showing her a .25 caliber semi-automatic pistol, which was stuck in his right pocket. The total amount of cash taken was $3,623.10. The defendant left the scene on a bicycle.

> On September 21, 2001, a white male, later identified as the defendant, entered the Sun Trust Bank, located at 61 North Market Street, Chattanooga, Tennessee, in the Eastern District of Tennessee, a bank whose deposits were then insured by the Federal Deposit Insurance Corporation, approached victim teller, and produced a demand note which read, "100's and 50's, gun in pocket." The defendant showed the victim teller a black semi-automatic pistol and left with $1,947.00 in U.S. currency. As the defendant made his escape, the dye pack exploded and the defendant discarded the bag containing the money and his clothing into nearby woods. The defendant disappeared in the crowds in Coolidge Park.

4

On around the 23rd of September, 2001, the defendant called a female friend and left a message on her answering machine tape that he had robbed a Payless Shoe Store in Georgia, but the job he did on Friday "blew up on him."

Law enforcement also located two witnesses who indicated that the defendant had admitted to them that he had committed the robberies.

During a search warrant for the defendant's trailer, law enforcement officers found another gun, a ponytail hat used in one of the other robberies, false teeth, pieces of paper with practice demand notes written on them, a phone book with the victim banks circled, a bicycle he used during one of the getaways, and some other items.

The defendant was arrested, Mirandized and admitted to committing the bank robbery.

(Criminal Court File No. 37).

    2.    *Guilty Plea Facts*

The parties agreed Humphreys would plead guilty to the two bank robberies and the related § 924(c) charges pursuant to a written plea agreement and, in return, the United States moved for the dismissal of the charges related to the ten armed robberies of the businesses and their related § 924(c) charges (Criminal Court File No. 25). In addition, the United States agreed to recommend that Humphrey's sentence in this case run concurrent with the sentence in his state case on charges related to these offenses.

In his plea agreement, Humphreys waived his statutory right to file a direct appeal on any ground, other than ineffective assistance of counsel or prosecutorial misconduct. In addition, he waived his right to appeal his sentence on any other ground, including any appeal right conferred by 18 U.S.C. § 3742, other than any sentence imposed in excess of the statutory maximum, and any punishment to the extent it constitutes an upward departure from the guidelines range deemed most applicable by the sentencing court. Humphreys also agreed not to file any motions or pleading pursuant to 28 U.S.C. § 2255 on any ground other than ineffective assistance of counsel,

5

prosecutorial misconduct, or a subsequent change in the interpretation of the law which may affect his case (Criminal Court File No. 25).

Humphreys appeared before this Court on August 1, 2002, to plead guilty. Humphreys was sworn and questioned by the Court. Humphreys acknowledged he had an opportunity to discuss all of the facts in this case with his attorney and that he was satisfied with his counsel's representation.

During Humphreys' rearraignment, the prosecutor summarized each paragraph in his plea agreement in open court. Humphreys' acknowledged under oath that he read his plea agreement, went over his plea agreement with counsel, and that he was entering a guilty plea because he was guilty (Criminal Court File No. 37).

The Court specifically explained certain portions of the plea agreement to Humphreys:

> The agreement does say if you provide substantial assistance to the government that they will ask me to give you a lower sentence than you might otherwise receive. But it's going to be up to the government to make that decision as to whether or not you have provided that assistance. If they decide that you have not done so, then they're not going to ask me to give you a lower sentence, which means you won't get a lower sentence.

(Criminal Court File No. 37, p. 9-10). Humphreys acknowledged that he understood what the Court told him and that he understood that even if his sentence was not lowered as a result of providing assistance, he would still be bound by his plea agreement. Humphreys also acknowledged that he understood he was giving up his right to fill a motion pursuant to 28 U.S.C. § 2255 (Criminal Court File No. 37, p. 10). In addition, Humphreys acknowledged he understood that he was looking at a long prison sentence because he was facing a minimum of thirty years on the two 924 Counts in addition to the time for the bank robberies.

Humphreys was sentenced to concurrent 70 month sentences on the bank robbery convictions, the lowest period within the then-mandatory Guideline range, and to a statutory

mandatory consecutive term of 5 years or 60 months on the first § 924(c) conviction, and to a statutory mandatory consecutive term of 25 years or 300 months on the second § 924(c) conviction, for a total sentence 430 months (Criminal Court File No. 28).

    *3.    § 2255 Facts*

    Humphreys raised three claims in his § 2255 motion. Humphreys claimed he was denied effective assistance of counsel; the prosecutor violated his Fourteenth Amendment rights when he committed a *Brady* violation; and he identified a list of "perceived violations of [his] rights protected under the United States Constitution (Court File No. 1).

    In his supporting facts document, Humphreys claims his plea agreement was based on the alleged strength of the prosecutor's case against him and he accepted a thirty-six year plea agreement because counsel pressured him into doing so.[1] Humphreys contends he told counsel to file an appeal on ineffective assistance of counsel claims but counsel told him his innocence to the counts which he pled guilty to in federal court and "the evidence against [him] in those cases was irrelevant because of all the alleged evidence in the other counts of the indictment" (Court File No. 1, Exhibit A, p. 1).

    Humphreys claims that two months prior to filing his § 2255 motion, he learned the federal case against him was severely misrepresented by his attorney and the prosecutor because most of the alleged evidence against him was lost or misplaced and cannot be found. In his § 2255 motion Humphreys claims the state chose to prosecute him on only one of the Hobbs Act counts, which he

---

    [1]    The Court observes the plea agreement did not specify a specific sentence. The sentence was not determined until the sentencing hearing proceedings before this Court.

claims is based on circumstantial evidence and that the other nine cases are not being pursued by the State due to the fact that evidence was lost while the case was in the federal court system and that the government's primary citizen informant disappeared (Court File No. 1, Exhibit A, p. 2). However, in his Supplement, Humphreys states "I pled to time served run concurrent on 5 robberies. My county time cancelled the 5 yr's imposed."  (Court File No. 22, p. 8).

Humphreys claims he has emails that prove his attorney was in collusion with the prosecutor. The email he refers to allegedly were produced while he was having a mental health exam in Butner, North Carolina, eleven months prior to his sentencing.  The emails reflect a discussion between his the state prosecutor and his state attorney   Accordingly to Humphreys, his "fate had been decided" by his attorney and the prosecutor before his evaluation was ever completed.

4.      *Facts Relative to Humphreys' Supplement*

In accordance with the Sixth Circuit's decision to remand the case, this Court ordered Humphreys to supplement his § 2255 pleading to document his claims that his petition should be considered as timely filed.

Humphreys was ordered to submit copies of all documents supporting his claim that his § 2255 motion is timely under § 2255(2) and (4).  Humphreys was specifically ordered to submit copies of documents he discovered through his pending state matter showing his pleas were unknowing and unintelligent because his attorney was untruthful in disclosing details of this case, and all documents demonstrating his attorney and the prosecutor severely misrepresented his case and that his attorney colluded with the prosecutor to decide his fate without his involvement prior to the conclusion of his mental evaluation.  In addition, Humphreys was ordered to file a detailed sworn statement identifying the misrepresentations his attorney made; the evidence he knew at the

time of the plea; the evidence he newly discovered; and how the government impeded him (Court File No. 15).

As explained below, Humphreys filed a supplement which did not directly address these matters with specific details. The only documents filed by Humphreys that are arguably responsive to the Courts ordered are four pages of AOL emails. The first email is a communication between the state prosecutor and Humphreys' state defense attorney wherein they discuss passing his case and whether the Federal charges cover the same robberies he has in state court (Court File No. 22, Exhibit A). The second page is essentially the same email as the first (Court File No. 22, Exhibit B). The third page does not appear to apply to Humphreys' case (Court File No. 22, Exhibit C). The portion of the fourth email applicable to Humphreys' case is the following communication from the state prosecutor to the state defense attorney:

> With regard to the Humphreys case, evidently he is going to plead to the two bankrobbery [sic] charges in federal court when he comes back from his evaluation; they were going to dismiss the others wherein he was charged under the Hobbs Act and let him plead to concurrent time under our cases. I think that this is an agreement that they were going to run past me and you. He is most likely looking at a minimum of 30 years. He has six other cases he [sic] waiting on by our grand jury. . . .

(Court File No. 22, Exhibit D).

Humphrey's supplement and his reply to the government's response provide very few pertinent facts. Humphreys claims his state trial attorney provided him with a discovery packet in February of 2004 which included the above referenced emails and information that "there was a lack of evidence." (Court File No. 22, p. 6). Humphreys, however, neither provides any documentation identifying the items of evidence he claims are missing nor submits documentation evidencing the alleged lack of evidence.

9

Humphreys does, however, claim he first realized something was wrong the day after his federal sentencing, on November 19, 2002,[2] when he was schedule for state sentencing on the same Hobbs Act cases the Federal Government had dismissed pursuant to the plea agreement. On that date, according to Humphreys, state prosecutors told his state defense attorney that due to the evidence being lost or misplaced by the Federal Government and the difficulty in locating a government witness, Mellissa Slack, they would accept a guilty plea on just one robbery charge to run concurrent to his federal time.

Nevertheless, Humphreys eventually entered, presumably, a *nolo contendere* plea, to five robberies in state court (Court File No. 22, p. 8). Humphreys claims it was not until February 2004, when he received his discovery packet, that he could actually "point out and prove that the evidence was gone[;]" proof that he has failed to present in this proceeding.

     5.    *Government's Response*

The Government contends Humphreys has failed to demonstrate he is entitled to equitable tolling. The Government attached a copy of a report requesting the United States Marshals Service to move Humphreys and another inmate to the Hamilton County Jail because an investigation revealed they had cut through a fence in the recreation yard at CCA-Silverdale on June 25, 2002 (Court File No. 20-4). The Government's Exhibit Number 2 reflects Humphreys was incarcerated at the Hamilton County Jail from June 26, 2002, through October 13, 2005, when he was transferred to the Tennessee Department of Corrections at Brushy Mountain Correctional Complex. The document sent by Mr. James A. Rambo of the Hamilton County Sheriff's Office, reflects Humphreys

---

       [2]      Humphreys wrote 2001 but since Humphreys was sentenced on November 18, 2002, he presumably meant November 19, 2002.

had access to Inmate Programs, Religious Services, Visitation, Recreation, and the United States mail while housed at the Hamilton County Jail from June 26, 2002, through October 13, 2005 (Court File No. 20-3).

The Government submitted an affidavit from Humphreys' defense counsel, however, it did not contain information relative to the remanded issues presently before the Court. The prosecutor filed his own affidavit wherein he avers none of the evidence pertaining to Humphreys' Federal cases was ever lost or misplaced and identifies the following items of evidence that he would have presented had the case proceeded to trial:

a.   Testimony of robbery victims describing the defendant, the robbery conduct, and the gun used in each offense.

b.   Testimony of Melissa Rae Slack.: On around the September 23, 2001, the defendant called a female friend (Melissa Rae Slack) and left a message on her answering machine tape that he had robbed the store in Georgia, but the job he did on Friday "blew up on him." He also confessed to her that he had robbed numerous other places. According to Slack, the defendant had recently flaunted and blown large amounts of cash in the bar where she works.

c.   Answering machine audiotape referenced above.

d.   Testimony of James Jabaley, an AA acquaintance of defendant's, who told the FBI that the defendant had unburdened his soul to Jabley and admitted to robbing numerous places.

e.   Bag found discarded in wooded area immediately after the September 21, 2001, Sun Trust Bank robbery. The bag contained the exploded dye pack,

     and the pistol used by the defendant in the robbery with his fingerprint firmly embedded on the gun stamped into the exploded dye.

f.   Testimony of investigators detailing consistent modus operandi for the robberies.

g.   Evidence obtained pursuant to a state search warrant for the defendant's trailer. Items include another gun, a ponytail hat used in one of the robberies,

11

false teeth used in another robbery, pieces of paper with "practice" demand notes written on them, a phone book with the victim banks names circled, a bicycle used in the First Tennessee Bank robbery getaway, a bottle of suntan lotion taken from one of the stores (he had touched it and didn't want to leave fingerprints), and videotapes taken from another store (taken for the same reason as lotion).

h.     The defendant's confession. The defendant was arrested, Mirandized, and confessed to all 15 robberies - stating he had needed money for drug fixes, alcohol, and to pay bills. He said he made people strip so that they couldn't follow him out of the store.

i.     Testimony of witnesses to establish interstate nexus of stores robbed.

j.     FDIC certificates of banks robbed.

k.     Testimony of investigators to establish loss amounts.

## III.    Analysis

    *A.    Timeliness of § 2255 Motion under 28 U.S.C. § 2255(f)(2)*

The Sixth Circuit, finding that this Court did not properly determine the statutory timeliness of Humphreys' motion, has instructed this Court to "consider his impediment argument under 28 U.S.C. § 2255(2)." (Court File No. 13, p. 12). The statute provides that the one year limitation period shall not begin to run until:

> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action:

28 U.S.C. § 2255(f)(2).

Humphreys' § 2255 motion did not include any allegation that he was impeded by governmental action from filing his § 2255 motion, thus, there was no allegation in his § 2255 motion to provide any basis for this Court to find his petition timely under 28 U.S.C. § 2255(f)(2). It was only in Humphreys' request to the Sixth Circuit Court of Appeals for a certificate of

12

appealability that he arguably asserted facts that could be considered relevant to § 2255(f)(2).[3]

The Government attached a copy of Humphreys' Request for a Certificate of Appealability which he filed in the Sixth Circuit (Court File No. 20-5, Exhibit 4). After reviewing that document the Court presumes the Sixth Circuit is referring to Humphreys' allegation that he was denied access to a law library as the impediment created by the government. Although the Hamilton County Jail does not have a law library, Humphreys' own submissions undercut any argument that this is an impediment that should toll the statute of limitations because, as his submissions reflect, Hamilton County Jail inmates are permitted to request legal research. The jail responds to their legal research request with an Inmate Legal Research Request Response, either with the requested research attached or the reason they were unable to provide the requested research. In addition, if there is a problem obtaining the requested research, the inmate is able to file a grievance to resolve the problem (Court File No. 22, Attachments 1-20).

According to Humphreys' submissions, he began requesting research in February of 2004, after his one year statute of limitations for filing a § 2255 motion had expired. Moreover, Humphreys has not provided any evidence demonstrating he was unable to request legal research or

that his legal research requests were denied during the one-year period when he could have filed a timely § 2255 motion.

Specifically, the record reflects that Humphreys requested and received legal research in February and March of 2004, after the one year statute of limitations for filing a motion under

---

[3] The Honorable Alice M. Batchelder made the same observation in her dissent. (Civil Court File No. 13, p. 13).

§ 2255 expired. There is nothing in the record reflecting that Humphreys could not have made the same efforts earlier. Indeed, although Humphreys claims he was in an isolation/segregation cell without access to a law library during the twelve months prior to expiration of the one year statute of limitations, he does not claim that he was unable to request legal research or that he requested legal research and jail personnel refused to provide him with the requested research. Rather, he claims he did not learn about the existence of § 2255 or AEDPA until after his one-year statute of limitations expired. This claim is disingenuous, however, because not only did Humphreys generally waived his right to file a § 2255 motion in his plea agreement, the prosecutor verbally referenced Humphreys general waiver to file a § 2255 motion during his rearraignment proceedings, and the Court specifically informed him he was "giving up one of the means that [he had] to challenge [his] conviction in this case . . . ," when he explained "you would normally have the right to file what we call a habeas corpus petition. It's a motion pursuant to a federal statute known as 28, United States Code, Section 2255. You're giving up your right to do that in this plea agreement except for certain reasons that are set out here." (Criminal Court File No. 37, pp. 12-13).

To further undercut Humphreys' claim that he was impeded from timely filing a § 2255 motion because he had no access to a law library, the Government submitted a letter from Mr. James A. Rambo, Corrections Administrative Supervisor of the Hamilton County Sheriff's Office wherein he explained that while housed in segregation, Humphreys still had access to Inmate Programs, Religious Services, Visitation, Recreation, and United States Mail (Court File No. 20-3). Indeed,

it appears that his requests for legal research were made while he was still housed in segregation.[4]

In this § 2255 proceeding, Humphreys bears the burden of proving he is entitled to relief. *Owen v. United States*, 660 F.2d 696, 702 (6th Cir. 1981); *Johnson v. United States,* 985 F.2d 560 (6th Cir. 1993) (unpublished table decision), *available in* 1993 WL 16707, at *2; *Durham v. United States,* 914 F.2d 256 (6th Cir. 1990) (unpublished table decision), *available in* 1990 WL 134780 *2-3; *United States v. Edmonson,* 922 F. Supp. 505 (D.Kan. 1996), *aff'd*, 107 F.3d 22 (10th Cir.), *cert. denied,* 521 U.S. 1128 (1997). Humphreys has failed to meet his burden.

In sum, although Humphreys claims he had no way of learning about a § 2255 motion, his plea agreement and the transcript of his rearraignment colloquy refute this allegation because they both clearly reflect that Humphreys was informed that one way to challenge his conviction was through a motion filed pursuant to 28 U.S.C. § 2255 and that, pursuant to his plea agreement, he was waiving his rights to file such a motion except for certain limited reasons which were specified in his plea agreement (Rearraignment Transcript, Court File No. 37, p. 10). Although the Hamilton County Jail does not have a law library for the inmates, the record clearly reflects that the inmates have access to legal research upon request and Humphreys could have requested legal research pertaining to filing a § 2255 motion before the one-year statute of limitations expired.

Accordingly, Humphreys has not demonstrated that unlawful government action prevented him from filing a timely § 2255 motion and he is not entitled to have the statute of limitations

---

[4]    The initial requests for legal research reflect he was housed in cell 5NW (Court File No. 22, Exhibit D, 1-5), which appears to be in segregation since Humphreys identifies only cells 6E2 and 6W1 as regular twelve-men cells (Court File No. 21, p. 2).

restarted under § 2555(f)(2).

B. *Timeliness Under 28 U.S.C. § 2255(f)(4)*

The Sixth Circuit also remanded the case instructing the Court to consider Humphreys' motion under §2255(f)(4) to determine whether Humphreys exercised diligence in discovering the facts he claims he discovered through his state case, *i.e.*, destruction of evidence and collusion between his federal criminal attorney and the federal prosecutor.

Humphreys argues that the limitations period should run from the date on which he received his state discovery packet which included evidence that his federal trial attorney misrepresented the federal case against him. According to Humphreys, the federal case against him was severely misrepresented by his defense attorney and the federal prosecutor because most of the alleged evidence against him had been lost or misplaced. Humphreys argues his § 2255 motion, which was filed approximately seventeen months after his conviction became final, qualifies for the exception for newly discovered facts, which tolls the deadline to one year from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence" 28 U.S.C. § 2255(f)(4). Although Humphreys became aware counsel had allegedly misrepresented the proof against him in his federal criminal case the day after his federal sentencing, he claims that "it wasn't until Feb. 2004, with [his] discovery package, that I [he] could actually point out and prove that the evidence was gone." (Court File No. 22, p. 8). In addition, he claims he also learned his federal trial attorney colluded with the federal prosecuting attorney and negotiated a thirty-six year plea almost a year in advance of sentencing.

First, the Court concludes that Humphreys' allegation that his federal trial attorney colluded with the federal prosecuting attorney is factually unsupported and does not provide grounds for restarting the one-year statute of limitations under § 2255(f)(4). The emails Humphreys has

16

submitted in support of this allegation simply show plea discussions took place prior to the entry of Humphreys' guilty plea. It is not unconstitutional for counsel to engage in plea negotiations with the prosecutor during the early stages of the criminal process. Accordingly, this allegation fails to provide cause to restart the statute of limitations under § 2255(f)(4). Second, as explained below, the Court concludes Humphreys allegation that counsel misrepresented the evidence against him because the evidence was actually missing, is simply incorrect.

In his original § 2255 motion Humphreys claimed he became aware of the alleged missing evidence during March of 2004. However, in response to the Court's Order directing Humphreys to supplement his § 2255 with a sworn statement of when he knew the alleged evidence was missing, Humphreys avers that:

> "on November 19, 200[2][5], the prosecutor told my attorney Robin Flores, that because of the evidence being lost or misplaced by the"Feds" and trouble locating a government witness (Mellissa Slack) that they would accept a guilty plea to just <u>one</u> robbery and it would run concurrent to my federal time. Imagine my shock, to have pled guilty to a 36 year sentence in Federal Court, basing my decision, either most or inpart on the strength of that evidence that had been lost. . . . Me and Mr. Flores rejected the offer and a new court date was set. . . . [I]t was not until February 2004, with my discovery package, that I could actually point out and prove that the evidence was gone and it was the same day that I discovered the Email transcripts.

(Court File No. , p. 7).

To be entitled to invoke the restarting of the statute of limitations pursuant to § 2255(f)(4), Humphreys must first prove his allegation that material evidence was in fact lost or destroyed and that he acted with diligence to discover these alleged new fact(s). Thus, the Court must determine whether Humphreys' allegation that the evidence was lost or destroyed is in fact true. If none of the evidence was destroyed, then the Court need not reach the "due diligence" issue and determine

---

[5] Humphreys identified the date as 2001 but he was sentenced in Federal Court on November 18, 2002. Thus, the Court construes the date as 2002.

whether a diligent person in Humphreys' circumstances would have discovered that most of the evidence supporting the criminal charges to which he pleaded guilty had been lost.

First, the Court observes that other than Humphreys' factually unsupported claims that the evidence has been lost, there is absolutely no proof supporting this allegation. Humphreys has not identified what evidence has been lost and has provided nothing more than a factually unsupported assertion. The Assistant United State Attorney ("AUSA") who prosecuted Humphreys, AUSA Steven S. Neff, submitted an affidavit listing all the evidence the government would have introduced had Humphreys gone to trial and averring that no evidence in this case was ever lost or misplaced. Humphreys has not refuted this affidavit (Court File No. 20-8).

Humphreys has failed to proffer any evidence demonstrating the evidence supporting his federal criminal convictions is lost or destroyed. There is nothing in the record to support Humphreys' allegation that the evidence was lost or destroyed. Consequently, as there is no credible proof before this Court that the evidence supporting his criminal convictions was lost or destroyed, there are no facts to support a finding that 28 U.S.C. § 2255(f)(4) is applicable.

Nevertheless, even if the evidence had been destroyed or misplaced, it is apparent that Humphreys did not diligently pursue this claim because he initially discovered the evidence was allegedly destroyed or missing on November 19, 2002, the day after he entered his guilty plea before this Court, but waited until 2004 to file his § 2255 motion. Indeed, Humphreys claims he was told on November 19, 2002, that the evidence supporting his federal conviction had been lost or destroyed and he met with his trial attorney in November of 2002 and requested that he file an appeal since the evidence was missing, but trial counsel allegedly responded that the missing evidence was "no big deal" (Court File No.  p. 8-9).  The record submitted by Humphreys clearly reflects that he is claiming to have initially discovered the alleged missing evidence  before the

statute of limitations for filing a § 2255 motion even began to run but he now claims not to have had sufficient facts to prove his claims.

Although Humphreys' admits he was initially notified on November 19, 2002, that the evidence supporting his federal conviction was missing, he claims he could not actually identify and prove the evidence was missing until he received his state discovery packet in 2004. Under § 2255(f)(4), the one-year limitation period begins to run on the date upon which the facts supporting the claim presented could have been discovered through the exercise of due diligence, not necessarily when they actually were discovered. *See Aron v. United States*, 291 F.3d 708, 711 (11th Cir. 2002); *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) (The time commences when the factual predicate could have been discovered through the exercise of due diligence not when a prisoner actually understands what legal theories are available or the facts legal significance). Humphreys admits that he initially discovered that the evidence was allegedly missing or lost the day after he entered his criminal plea in federal court on November 19, 2002. Nevertheless, from November 19, 2002, until 2004 Humphreys did not diligently pursue this claim. In addition to Humphreys failure to submit any proof that the evidence was destroyed, he has failed to explain how the alleged proof he obtained in his discovery package altered the factual basis for his collateral claim that accrued the day after he entered his guilty plea when his state trial counsel told him the evidence was missing. Moreover, even if the evidence had been destroyed, these allegations and Humphreys failure to pursue this claim for two years are not indicative of a reasonably diligent quest for information. Indeed, Humphreys was initially notified of the evidence problem November 19, 2002, and he has neither explained why he was unable to pursue this matter, nor described any thwarted attempts to pursue this matter from November 2002 until 2004, when he filed his § 2255 motion. There is no credible proof in the record demonstrating Humphreys was unable to request

legal material and file a timely § 2255 motion.

The limitation period which Humphreys now presses begins to run when the facts could have been discovered through the exercise of due diligence, not when they were actually discovered. *See Aron v. United States*, 291 F.3d 708, 711 (11th Cir. 2002). Consequently, assuming the evidence actually was destroyed, given that the statutes clear policy requires timeliness and promptness, Humphreys efforts of doing nothing after he was allegedly initially notified the evidence was missing, fell far short of reasonable diligence. Therefore, his claim that he could not actually point out and prove that the evidence supporting his federal conviction was missing until he received his state discovery packet in 2004 cannot constitute "new evidence" only first discoverable "through the exercise of due diligence" in 2004 and fails to require the application of § 2255(f)(4).(Court File No. 22, p. 8).

In sum, Humphreys factually unsupported assertion that there was no evidence to support his federal convictions is simply incorrect. Moreover, even if the allegation had been correct, Humphreys did not exercise due diligence in pursuing this claim because he made the discovery on November 19, 2002, but sat idly by and did nothing to pursue this claim until 2004. Consequently, Humphreys has failed to demonstrate the existence of any evidence to support application of 28 U.S.C. § 2255(f)(4).

Accordingly, the § 2255 motion is not timely under § 2255(f)(4) because there is no proof any of the evidence was lost and in the alternative, it is untimely because Humphreys actually knew the necessary facts supporting his ineffective assistance of counsel claim almost two years prior to filing his § 2255 motion.

C.     *Doctrine of Equitable Tolling*

In his original § 2255 motion, Humphreys requested that his one-year "deadline be restarted

or tolled" because he claimed he could not have previously discovered the alleged evidence through due diligence (Court File No. 1, Supplement p. 2). Unlike his claims in his § 2255 motion, in his request for a certificate of appealability, Humphreys claimed that if he had been housed in the general population, he would have learned about the time deadlines under AEDPA. In addition, he claimed he did not learn about the existence of a § 2255 motion or AEDPA until the one-year statute of limitations for filing a § 2255 had expired.[6] Since the Sixth Circuit apparently determined Humphreys could raise an equitable tolling claim for the first time on appeal, the Court presumes the Sixth Circuit's instruction for the District Court to determine what Humphreys knew or what a reasonable person in Humphreys' position might have been reasonably expected to do requires the Court to analyze the equitable tolling claim.

Thus, the Court will analyze the tolling issue based on Humphreys' claim that he was unaware of the one-year limitation period until after it expired and his failure to file was excused by this ignorance.[7] For the reasons explained below, the Court concludes that, under the

---

[6] The Court has concluded, *supra*, in this memorandum opinion, that Humphreys' claim that he has proffered the existence of circumstances to excuse his late filing and equitably toll his one-year statute of limitations because he was unaware he had a right to file a § 2255 motion until after the one-year statute of limitations expired, is disingenuous because Humphreys waived his right to file a § 2255 motion, except under very limited circumstances, in his written plea agreement and during his rearraignment. The plea agreement specifically provided that Humphreys could file a § 2255 motion alleging ineffective assistance of counsel. Moreover, Humphreys was specifically advised by this Court during his rearraignment that he was waiving his right to challenge his conviction under § 2255 except for the limited reasons specified in his plea agreement (Criminal Court File No. 37, p. 12-13). Thus, the Court declines to analyze Humphreys' claim that he was unaware of the existence of a § 2255 motion and that he could file such a motion until 2004 because the record reflects that Humphreys was advised of his rights to file a § 2255 motion in his plea agreement and during his plea colloquy.

[7] As a result of the Court's prior conclusion in this memorandum opinion that the evidence supporting Humphreys federal convictions is not missing, and alternatively, that with

circumstances of this case, the doctrine of equitable tolling is inapplicable.

Although the one-year statute of limitation period applicable to filing motions pursuant to 28 U.S.C. § 2255 is subject to equitable tolling, *Dunlap v. United States*, 250 F.3d 1001, 1004 (6th Cir. 2001), the Sixth Circuit has repeatedly made clear its view that "equitable tolling relief should be granted only sparingly." *Amini v. Oberlin College*, 259 F.3d 493, 500 (6th Cir. 2001). "Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000) (citations omitted). "Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Id.*, at 561. Moreover, courts have held that a lack of actual notice of the AEDPA or ignorance of the law in general does not excuse prompt filing. *See, e.g., Fisher v. Johnson*, 174 F.3d 710, 714-15 (5th Cir. 1999).

Equitable tolling is only applicable in certain limited circumstances after a court has properly considered and balanced the factors set out in *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988). *Id.* at 1006, 1009. In *Andrews v. Orr*, the Sixth Circuit specifically identified five factors to consider when determining the appropriateness of equitably tolling a statute of limitations: (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. When considering these factors, prejudice may only be considered if other factors of the test are met

---

due diligence Humphreys could have discovered the alleged facts to support his missing-evidence claim prior to 2004, the missing-evidence claim will not be analyzed in this section of this memorandum opinion.

and therefore can only weigh in the government's favor. *See Andrews*, 851 F.2d at 151.

Although at first glance it appears that the first and second *Andrews* factors weigh in Humphreys favor because he claims he lacked notice of the filing requirement, a more thorough review reveals that Humphreys has failed to explain why he did not attempt to determine the filing requirements the day after he entered his guilty plea in Federal Court when he was allegedly informed there was no evidence to support his federal convictions. Thus, Humphreys has failed to show that his failure to meet the one year statute of limitation unavoidably arose from circumstances beyond his control.

Humphreys was aware that pursuant to his plea agreement, he could file a § 2255 motion on the grounds that counsel was ineffective or on the grounds of prosecutorial misconduct, the exact grounds which he raises in his tardy § 2255 motion. In addition, he could have requested to be provided with the statute of limitations and information on filing a § 2255 motion while confined in segregation. Moreover, neither "excusable neglect" nor ignorance of the law alone are sufficient to invoke equitable tolling. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)("It is well-settled that ignorance of the law alone is not sufficient to warrant equitable tolling"). Consequently, although it appears Humphreys lacked actual and constructive notice of the one-year statute of limitations because he was ignorant of the filing deadline, that argument is unpersuasive because Humphreys does not show that he was prevented from learning the statute of limitations or that extraordinary circumstances beyond his control made it impossible for him to timely file his motion. *See Harris v. Hutchinson,* 209 F.3d 325, 329-330 (4th Cir. 2000) (equitable tolling should apply only where petitioner is prevented from asserting his claim by wrongful conduct of the respondent or where extraordinary circumstances beyond the petitioner's control make it impossible to file the claim on time). Moreover, ignorance of the law is not a valid basis for equitable tolling. *See United*

*States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004)("[E]ven in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling . . . misconception about the operation of the statute of limitations is neither extraordinary nor a circumstance external to [prisoner's] control"]; *Cobras v.Burgess*, 306 F.3d 441, 444 (6thCir. 2002) (limitations period not tolled even though petitioner did not understand, read, or write English where he had received assistance in other *pro se* pleadings and thus his language difficulties had not prevented him from filing a petition in a timely manner), *cert. denied*, 538 U.S. 984 (2003); United *States v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002) (a prisoner's own ignorance or mistake does not warrant equitable tolling); *Delaney v. Matesanz*, 264 F.3d 7, 16 (1st Cir. 2001) (equitable tolling normally appropriate only when circumstances beyond litigant's control have prevented him from filing timely); *Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir. 2000); *Smith v. McGinnis*, 208 F.3d 13, 18 (2d Cir. 2000); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (the fact of incarceration, including an inadequate law library insufficient to warrant equitable tolling).

Section 2255 clearly states: "A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from . . . the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255. Since ignorance of the statute of limitations is insufficient to warrant equitable tolling and it does not appear that Humphreys was prevented from requesting legal material pertaining to the time limit for filing a motion pursuant to 28 U.S.C. § 2255, it is clear that the first two factors, lack of actual and constructive notice of the one-year statute of limitations, do not weigh heavily in favor of Humphreys. Humphreys was not reasonable in remaining ignorant of the notice requirement, thus, the fifth factor does not weigh in Humphreys favor either.

Turning to the third equitable tolling factor, the Court must determine whether Humphreys was diligent in pursuing his rights. As the Court previously noted, Humphreys was notified during

his rearraignment that he could file a § 2255 motion on his claims of ineffective assistance of counsel and prosecutorial misconduct. Even though he was not specifically notified of the applicable statute of limitations for filing a § 2255 motion, Humphreys could have submitted a legal research request form to the jailers requesting a copy of the statute pertaining to filing a § 2255 motion and the applicable statute of limitation when he was first notified of the alleged missing evidence. Humphreys made no diligent effort to file a § 2255 motion until seventeen months after his judgment of conviction became final and five months after the statute of limitations had expired. Thus, Humphreys was not diligent in pursuing his rights and this factor does not weigh in his favor.

The fourth factor, "absence of prejudice," "is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify tolling is identified[.]" *Andrews v. Orr*, 851 F.2d at 151. Since Humphreys has not identified any factor upon which he reasonably relied to excuse his delay in filing a timely § 2255 motion, the Court does not consider the lack of prejudice to the defendant. *See id.* at 152. Accordingly, Humphreys is not entitled to equitable tolling and his § 2255 motion is untimely.

## V.    Conclusion

For the reasons stated *supra*, the Court concludes Humphreys' motion under 28 U.S.C. § 2255 is time-barred because it does not meet any of the statutory tolling provisions nor has Humphreys demonstrated he is entitled to equitable tolling. Additionally, an evidentiary hearing is not required. This matter will be **DISMISSED WITH PREJUDICE.**

In addition, the Court **CERTIFIES** that any appeal from this action would not be taken in

good faith and would be totally frivolous. Therefore, this Court will **DENY** Humphreys leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure.

Humphreys has failed to make a substantial showing of the denial of a constitutional right or that jurists of reason would find it debatable whether the district court was correct in its ruling that the § 2255 motion is time-barred. 28 U.S.C. § 2253(c)(2); Rule 22(b) of the Federal Rules of Appellate Procedure; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a certificate of appealablity **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

A separate judgment will enter.


_____*/s/ R. Allan Edgar*_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE